**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

MICHAEL MERRITT KOSTENKO,

Plaintiff,

v. CIVIL ACTION NO. 5:12-cv-01882

U. S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, and
SECRETARY KATHLEEN SEBELIUS,

Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion of the United States of America to Dismiss for Lack of Subject Matter Jurisdiction* (Document 4) and supporting memorandum (Document 5), Plaintiff's response in opposition (Document 8) and Defendant's reply (Document 9), together with Plaintiff's Petition (Document 1). After careful review, the Court grants Defendant's motion.

## ***I. FACTUAL BACKGROUND***

Plaintiff is a physician who received a scholarship from the National Health Services Corp ("NHSC") Scholarship Program, 42 U.S.C. § 2541, in 1980 to finance his medical education. (Document 5 at 1-2); (Document 1 at 1). The NHSC Scholarship Program "provides funding for medical students in return for service in communities under served by health services." *U.S. v. Baker*, 2012 WL 3612273 (M.D.Fla. August 21, 2012). Under the NHSC Act at the time, if the scholarship recipient breaches his contract "'by failing (for any reason…) either to begin such

individual's service obligation. . . or to complete such service obligation,' the United States is entitled to recover three times the amount of scholarship funds awarded, plus interest." *United States v. Vanhorn*, 20 F.3d 104, 107 (4th Cir.1994) (citing 42 U.S.C. § 254o (b)(1)(A) (1988)).

On June 2, 1994, this Court found that Plaintiff failed to meet his service obligation, and thus, granted the Government's motion for summary judgment and ordered that "the Government is entitled to all damages calculated pursuant to 42 U.S.C. § 2540 (b)(1)." *U.S. v. Kostenko*, Civil Action No. 5:92-cv-1025 (S.D.W.Va. June 2, 1994) (Hallanan, E). On March 22, 1995, the Fourth Circuit Court of Appeals affirmed "on the reasoning of the district court." *U.S. v. Kostenko*, 50 F.3d 8, 1995 WL 120682 (4th Cir.1995) (per curiam).

By letter dated August 20, 1997, the Department of Health and Human Services ("HHS") notified Plaintiff that if he did not negotiate a Repayment Agreement with the Department of Justice ("DOJ") within sixty (60) days or establish an offset agreement to have his Medicare and/or Medicaid reimbursements directly applied to his account, then his case would be immediately referred to the Office of Inspector General ("OIG") to initiate exclusion proceedings against him. (Document 4-3 at 2). The letter further stated that his "program exclusion will remain in effect until [his] entire debt has been paid." (*Id.*).

By letter dated January 30, 1998, the OIG notified Plaintiff that because of his failure to pay his debt or to enter a repayment plan, he was "being excluded from participation in the Medicare program pursuant to [S]ection 1892 of the Social Security Act . . . [and was] also being excluded from participation in the Medicare, Medicaid, and **all** Federal health care programs as defined in section 1128B(f) of the Act." (Document 4-4 at 2) (emphasis in original). The letter further noted that "[t]hese exclusions are effective 20 days from the date of this letter and will

remain in effect until [his] debt has been completely satisfied." (*Id.*). Furthermore, "[a] detailed explanation of the authority for this exclusion, its effect, the right to waiver, and [his] appeal rights [was] enclosed and [was] incorporated as part of this notice by specific reference." (*Id.*). The enclosure detailed his right to and procedure for appeal in accordance with 42 CFR 1001.2007. (*Id.* at 4). It stated that "[a request for a hearing before an administrative law judge] must be made in writing within 60 days of [his] receiving the OIG's letter of exclusion." (*Id.*). Plaintiff did not respond.

In July 2001, Plaintiff entered into a Settlement Agreement with the DOJ and OIG. (Document 4-5 at 2), (Document 1 at 2). The Settlement Agreement stated that "[a]s of July 6, 2001, the total amount owed under the Judgment…is $956,680.13, which includes the principal, accrued interest and late payment charges, if any." (Document 4-5 at 2). Plaintiff agreed "to make an initial payment of $10,000.00 upon signing this Agreement and to make payments of at least $10,000.00 per month…until notified otherwise by amendment to this Agreement issued by the U.S. Department of Justice." (*Id.* at 3). In consideration of Plaintiff's agreement to satisfy his debt, the OIG "agree[d] to stay the effect of the exclusion on [Plaintiff's] eligibility to receive reimbursement from Medicare, and further agree[d] to notify the appropriate Federal and State agencies that [Plaintiff] is eligible to receive payment under any Federal health care program, as defined in 42 U.S.C. § 1320a-7b(f)." (*Id.*). The agreement also provided that Plaintiff "remains excluded 'until such time as the entire past-due obligation has been repaid,' and that this Agreement provides for a stay of the effect of the exclusion only while [Plaintiff] is in full compliance with its terms." (*Id.*). Furthermore, Plaintiff's failure to comply with the payment terms would "result in the OIG rescinding the stay of exclusion from participation in Medicare,

Medicaid, and all other Federal health care programs until the entire Judgment amount and accrued interest . . . have been paid in full to the satisfaction of the PSC [Program Support Center] and the OIG [Office of the Inspector General]." (*Id.*). The Settlement Agreement stipulated that "[s]hould a default on the Agreement occur, [Plaintiff] waives all procedural rights including but not limited to notice, hearing, appeal, and administrative and judicial review, with respect to the immediate reimposition of the exclusion under 42 U.S.C. §§ 1320a-7b(14) and 1395ccc(a)(3)." (*Id.*)

By letter dated July 26, 2001, the OIG notified Plaintiff that "[e]ffective with the date of this letter, [his] exclusion from participation in Medicare, Medicaid, and all Federal health care programs has been stayed." (Document 4-6 at 2). The letter further advised Plaintiff that "[f]ailure to adhere to the terms of the repayment agreement will result in the stay being lifted and the exclusion going back into effect in accordance with the terms outlined in our January 30, 1998 letter to [him]." (*Id.*)

In his Petition, Plaintiff states that he "had to cease repayment under the terms he had previously agreed to, on or about February 22, 2005." (Document 1 at 3). He alleges that "[d]uring this time of economic and professional hardship, it was not possible for [him] to resume the $10,000/month payments on the loan and penalties he had previously agreed to, and that amount rapidly grew to over $1,000,000." (*Id.* at 4).

By letter dated June 27, 2008, HHS advised Plaintiff that he was "in default of the repayment terms as stipulated in the settlement agreement [he] entered with the United States on July 26, 2001." (Document 4-7 at 2). The letter further stated that "[d]efaulting on [his] settlement agreement will result in [his] stay of exclusion being lifted and [he] will be permanently

excluded from further participation in the Medicare/Medicaid programs." (*Id.*). Plaintiff was also advised that "[**i]f the Department of Health and Human Services (DHHS) does not receive a payment from [him] to bring your account current by July 27, 2008,** the DHHS will initiate actions to permanently exclude [him] from participating in the Medicare/Medicaid programs, pursuant to paragraph 8 of the settlement agreement." (*Id.*) (emphasis in original).

By letter dated August 29, 2008, the OIG notified Plaintiff that he had defaulted on his repayment agreement, and therefore, "[his] exclusion from participation in Medicare, Medicaid and all Federal health care programs has been reinstated effective August 12, 2008 and will remain in effect until [his] debt has been completely repaid." (Document 4-8 at 2), (Document 1 at 4).

In a letter dated January 14, 2011, Plaintiff requested "re-consideration of [his] Public Health Services Corps Scholarship Service termination." (Document 4-9 at 2). Specifically, Plaintiff requested an administrative hearing "to address if proper cause existed for [his] being terminated by the Dept of HHS in the early 1990s" and "[r]econsideration of [his] default status and Medicare exclusion." (*Id.*)

By letter dated March 14, 2011, HHS advised Plaintiff that it "cannot accommodate [his] request for an administrative hearing or reconsideration of [his] NHSC SP default status" because "the courts found that [he was] properly placed in default of [his] service obligation, effective July 27, 1985, and [is] liable for monetary damages." (Document 4-10 at 2). HHS further noted that "[t]here is no mechanism for review of this judgment by HHS." (*Id.*). Furthermore, the letter stated that "the HHS Office of Inspector General (OIG) will not reconsider [Plaintiff's] exclusion from Medicare and all other Federal health care programs at this time . . . because [he] violated the terms of the settlement agreement, the stay was lifted and the exclusion was re-imposed, effective

August 12, 2008. (*Id.*). The letter also advised Plaintiff that [he is] not eligible to be reinstated until [his] entire past-due obligation has been paid." (*Id.*).

On April 4, 2011, Plaintiff wrote to HHS and requested a waiver of his NHSC debt. (Document 1 at 5); (Document 4-11 at 2). By letter dated May 2, 2011, HHS notified Plaintiff that it was in receipt of his April 4, 2011 letter regarding his request for a waiver of his NHSC scholarship program judgment debt and enclosed "information on the conditions necessary for a waiver and the instructions for submitting a waiver request." (Document 4-12 at 2).

Plaintiff alleges that on September 14, 2011, he received an email from HHS notifying him of HHS's receipt of his completed paperwork necessary for lawful consideration of a waiver. (Document 1 at 5). However, Defendant attached a letter from Plaintiff to HHS's Office of Legal and Compliance, dated September 20, 2011, wherein Plaintiff states "further to your email, dated September 16th, 2011, please see enclosed 2009 W2 and 2008 W2 and income tax return." (Document 4-13 at 3). Defendant asserts that "HHS is currently conducting a review of Plaintiff's financial documentation and plans to issue a waiver decision when this review is complete." (Document 5 at 6).

## *II. PROCEDURAL HISTORY*

On June 5, 2012, Plaintiff filed a *Petition for Waiver from Public Health Services Corps Scholarship* in the Southern District of West Virginia (Document 1), wherein Plaintiff requests (1) a "judicial order for HHS to grant waiver" and (2) a "judicial order removing HHS exclusion of petitioner from Medicare, Medicaid and federal insurance participation." (*Id.* at 6). On August 6, 2012, Defendant, HHS, filed a motion to dismiss for lack of subject matter jurisdiction (Document 4) and supporting memorandum (Document 5). In support of the motion, Defendant asserts that

the Court lacks subject matter jurisdiction for two reasons: (1) "Plaintiff has failed to exhaust the administrative remedies available for waiver of his National Health Service Corps debt" and (2) "Plaintiff has failed to timely exhaust the administrative remedies available for appealing his exclusion from federal health care program such as Medicare and Medicaid." (Document 4 at 1). On September 10, 2012, Plaintiff filed his response in opposition (Document 8), wherein he argues that HHS's "decision of non-response is not reasonable." On September 17, 2012, Defendant filed its reply (Document 9), wherein it argues that Plaintiff's response was untimely as it was filed three days past the deadline established by Magistrate Judge VanDervort's order entered on August 7, 2012, and contends that Plaintiff has failed to demonstrate the Court has subject matter jurisdiction over his claims.

On September 25, 2012, Plaintiff filed a *Clarification (sic) of Misrepresentations by the U.S.* (Document 10), and then on September 28, 2012, Plaintiff filed a *Supplemental (sic) Memoranda to Issue 10 of Petitioner* (Document 12). On October 22, 2012, Plaintiff filed a *Notice to Court of Petitioner's Intent to Amend Complaint* (Document 22). On November 5, 2012, Plaintiff filed his *First Amended Petition for Judicial Review of Public Health Service Corps Scholarship Waiver Decision.* (Document 16). On November 19, 2012, Defendant filed its *Motion to Strike First Amended Petition* (Document 17). Plaintiff did not respond to Defendant's motion. On December 10, 2012, the Court granted Defendant's motion and ordered that Plaintiff's first amended petition be stricken from the record. (Document 18). Then, on December 12, 2012, Plaintiff filed a *"Notice" of Petitioner Exercising Option under 28 U.S.C. 2675 and Motion for Case Statement Order* (Document 19), which Defendant responded to on December 26, 2012 (Document 20). On December 28, 2012, Plaintiff filed a *Request of*

*Clarification of Claim* (Document 21), wherein "Petitioner prays for clarification by the Court as to standing of current Claim 1. As a Federal Tort Claims Act 2. As a RICO Claim, 3. For non-monetary relief and 3. Progression under FTCA for alleged intentional negligence."

## *III. STANDARD OF REVIEW*

If subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the Plaintiff bears the burden of showing that federal jurisdiction is proper. *William v. Meridian Management Corporation*, 50 F.3d 299, 304 (4th Cir.1995) (citation omitted). "[A] defendant may challenge subject matter jurisdiction in one of two ways." *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir.2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). First, the defendant can contend "that the jurisdictional allegations of the complaint [are] not true." *Adams*, 697 F.2d at 1219. In that event, "'[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219). In the alternative, the defendant may argue – as Defendant does here- "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. In that case, "all the facts alleged in the complaint are assumed to be true." (*Id.*). In essence, Plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." (*Id.*).

## *IV. DISCUSSION*

The threshold question for the Court to consider is whether it has federal subject matter jurisdiction in this case. Not only does Plaintiff bear the burden of showing that the Court has

subject matter jurisdiction, but he also "bears the burden of pointing to . . . an unequivocal waiver of immunity." *Williams*, 50 F.3d at 304 (quoting *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied*, 466 U.S. 958 (1984) ("The party who sues the United States bears the burden of pointing to…an unequivocal waiver of immunity."))

Although Plaintiff does not state that the Court has subject matter jurisdiction or why, he is acting pro se, and therefore, his pleadings are entitled to liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff is requesting a "judicial order for HHS to grant [him a] waiver, alleging that HHS has failed to respond to his request for a waiver of his NHSC debt requested on April 4, 2011, and a "judicial order removing HHS['s] exclusion of [his] Medicare, Medicaid and federal insurance participation." (Document 1 at 1, 9). With respect to Plaintiff's first claim, it is clear from Plaintiff's petition that he is suing a federal agency based on its decision or rather lack thereof, thereby, invoking the Administrative Procedure Act ("APA") pursuant to 5 U.S.C. § 702. Plaintiff's second claim, regarding his exclusion of Medicare, Medicaid and federal insurance participation invokes the Social Security Act, codified at 42 U.S.C. § 1395ccc.

## *V. ANALYSIS*

### *A. Judicial Review under the Administrative Procedure Act*

"The APA waives the government's sovereign immunity from suit and permits federal court review of final agency actions, when the relief sought is other than money damages and the plaintiff has stated a claim 'that an agency or an officer or employee thereof acted or failed to act in an official capacity.'" *Comsat Corporation v. National Science Foundation*, 190 F.3d 269, 274 (4th Cir.1999) (quoting 5 U.S.C.A. § 702)). "[T]he APA is not an independent grant of subject matter jurisdiction to the federal courts . . . [r]ather 28 U.S.C.A. § 1331 serves as the jurisdictional

basis for federal courts 'to review agency action.'" *Sigmon Coal Co., Inc. v. Apfel*, 226 F.3d 291, 301 (4th Cir.2000) (quoting *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). However, the APA does not apply "to the extent that – (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

Pursuant to the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA limits judicial review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Therefore, "the statute requires two essential elements as a prerequisite to judicial review: (1) final agency action and (2) no other adequate remedy in a court." *Klein v. Commissioner of Patents*, 474 F.2d 821, 824 (4th Cir.1973). "Agency action" is defined in 5 U.S.C. § 551. That section provides that "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13), and also that "'order' means the whole or a part of a final disposition . . . of an agency in a matter other than rule making." 5 U.S.C. § 551(6).

"[A]n agency action may be considered 'final' only when the action signals the consummation of an agency's decisionmaking process *and* gives rise to legal rights or consequences." *Comsat Corporation v. National Science Foundation*, 190 F.3d 269, 274 (4th Cir.1999) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). One of the main reasons for this so-called "finality rule" is "that the agency is specifically suited to deal with the type of cases in question, and it would weaken its effectiveness for the courts to abort the administrative procedure before the agency has completed its task." *Klein*, 474 F.2d at 825.

Under the APA, "[a] reviewing court shall – (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envt'l coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir.2009) (citing *Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1400 (4th Cir.1993)).

***i. Plaintiff's Request for a Waiver of his NHSC debt.***

The Court lacks subject matter jurisdiction with respect to Plaintiff's request for a waiver of his NHSC debt because HHS has not issued a final decision. Under Section 62.12 of the Code of Federal Regulations, a NHSC debtor "may seek waiver or suspension of the service or payment obligation incurred under this part by written request to the Secretary setting forth the bases, circumstances, and causes which support the requested action." 42 C.F.R. § 62.12(b)(1). "The Secretary may waive or suspend any service or payment obligation incurred by a participant whenever compliance by the participant (i) is impossible, or (ii) would involve extreme hardship to the participant and if enforcement of the service or payment obligation would be against equity and good conscience." 42 C.F.R. § 62.12(b)(2).

In other words, "appeal may be made to the Secretary of DHHS as the agency overseeing the program, who in proper circumstances may cancel, waive, or suspend the scholar's obligation" *U.S. v. Vanhorn*, 20 F.3d 104, 112 (4th Cir.1994) (citing 42 U.S.C. § 254o (c)(3) (1988); 42 CFR § 62.12 (1992)). According to the Fourth Circuit Court of Appeals "[a]gency action is ***then*** reviewable by a court of law and may be overturned when that action is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with the law." *Vanhorn*, 20 F.3d at 112 (citing 5 U.S.C. § 706(2)(A)(1988)) (emphasis added).

In the instant case, Plaintiff wrote to HHS on April 4, 2011, and requested a waiver of his NHSC debt. (Document 1 at 5); (Document 4-11 at 2). By letter dated May 2, 2011, HHS notified Plaintiff that it was in receipt of his letter and enclosed "information on the conditions necessary for a waiver and the instructions for submitting a waiver request." (Document 4-12 at 2). Plaintiff wrote a letter to HHS's Office of Legal and Compliance, dated September 20, 2011, wherein he states "further to your email, dated September 16th, 2011, please see enclosed 2009 W2 and 2008 W2 and income tax return." (Document 4-13 at 3). Defendant asserts that "HHS is currently conducting a review of Plaintiff's financial documentation and plans to issue a waiver decision when this review is complete." (Document 5 at 6).

Defendant argues that "because HHS has not issued a waiver decision, Plaintiff's administrative remedies have not been exhausted." (Document 5 at 13). However, Plaintiff argues that "HHS['s] non-action, decision of non-response, is not reasonable." (Document 8 at 4). Plaintiff contends that "HHS has not communicated since September of 2011 HHS['s] email confirmation of [Plaintiff's] completed file for waiver request, and could have at any time preempted this Judicial Review by having answered [Plaintiff's] waiver request." (*Id.*).

Plaintiff has failed to carry his burden of persuasion in showing that the Court has subject matter jurisdiction. *See*, *William*, 50 F.3d at 304. Although Plaintiff has sought waiver from the Secretary, the Secretary has not yet reached her decision. Therefore, the Court has no final agency action to review, and thus, no subject matter jurisdiction. The Court finds that HHS's motion to dismiss should be granted with respect to Plaintiff's request for a waiver of his NHSC debt.

***B. Judicial Review under the Social Security Act.***

Plaintiff was originally excluded from participation in the Medicare program pursuant to Section 1892 of the Social Security Act (the "Act"), codified at 42 U.S.C. § 1395ccc. (Document 4-4 at 2). In addition, Plaintiff was also excluded from participation in Medicare, Medicaid, and all federal health care programs "pursuant to the authority contained in [S]ection 1128(b)(14) of the Act." (Document 4-4 at 2). Section 1128(b)(14) of the Act codified in 42 U.S.C. § 1320a-7, provides in pertinent part:

> The Secretary may exclude…from participation in any Federal health care program… [a]ny individual who the Secretary determines is in default on repayments of scholarship obligations or loans in connection with health professions education made or secured, in whole or in part, by the Secretary and with respect to whom the Secretary has taken all reasonable steps available to the Secretary to secure repayment of such obligations or loans…

42 U.S.C. § 1320a-7(b)(14). Under the Act, "[a]ny individual, after any *final* decision of the [agency] made *after a hearing* to which [the excluded individual] was a party…may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision." 42 U.S.C. § 405(g); *see Statler v. DHHS,* 2011 WL 972584 (W.D.Va. March 16, 2011) (emphasis added). 42 U.S.C. § 405(h) provides in pertinent part:

> …No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States…shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). In *Shalala v. Illinois Council on Long Term Care, Inc*., the Supreme Court noted that "those words ['to recover on any claim arising under this subchapter'] clearly apply in a typical Social Security or Medicare benefits case, where an individual seeks a monetary benefit from the agency (say, a disability payment, or payment for some medical procedure), the agency

denies the benefit, and the individual challenges the lawfulness of that denial . . . [t]he statute plainly bars § 1331 review in such a case." *Shalala*, 529 U.S. at 10. "Courts interpret 'arising under' broadly as including claims that are 'inextricably intertwined' with benefits determinations under the Medicare Act." *United States Dep't of H.H.S. v. James*, 256 B.R. 479, 481 (W.D.Ky Nov. 3, 2000) (citing *Heckler v. Ringer*, 466 U.S. 602, 615 (1984)).

Pursuant to 42 U.S.C. § 1320a-7(f)(1), "any individual . . . that is excluded . . . from participation [in federal health care programs] is entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision *after such hearing as is provided* in section 405(g) of this title." 42 U.S.C. § 1320a-7(f)(1) (emphasis added).

***i. Plaintiff's Exclusion Claim.***

The Court lacks subject matter jurisdiction with respect to Plaintiff's exclusion claim because Plaintiff did not timely exhaust his administrative remedies, and furthermore, Plaintiff's Settlement Agreement precludes judicial review of his claim. In his Petition, Plaintiff "requests [a] judicial order removing [his] HHS exclusion . . . from Medicare, Medicaid and federal insurance participation." (Document 1 at 6). Defendant contends that "Plaintiff's request that the Court 'remove' his exclusion must be denied because there is not a final decision, and therefore no basis for the Court to exercise subject matter jurisdiction." (Document 5 at 13). Defendant argues that "[s]ections 205(g) and (h) of the Social Security Act, codified at 42 U.S.C. § 405(g) and (h), bar judicial review of claims arising under the Act prior to a final decision by the Secretary." (Document 5 at 13) (citing *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 14

(2000); *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 763-65 (1975)).

As stated above, under the Act, "[a]ny individual, after any *final* decision of the [agency] made *after* a *hearing* to which [the excluded individual] was a party…may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision." 42 U.S.C. § 405(g); *see Statler v. DHHS*, 2011 WL 972584 (W.D.Va. March 16, 2011) (emphasis added). By letter dated January 30, 1998, HHS's OIG notified Plaintiff that he was being excluded from participation in the Medicare, Medicaid, and all federal health care programs effective twenty (20) days from the date of the letter. (Document 4-4 at 2). The letter also advised Plaintiff that he could request a hearing before an administrative law judge by making a written request within sixty (60) days of the receipt of the letter in accordance with 42 CFR 1001.2007. (Document 4-4 at 3). Plaintiff did not make a written request for a hearing within sixty (60) days of his receipt of the letter; and therefore, no hearing was held. Instead, thirteen (13) years later, by letter dated January 14, 2011, Plaintiff requested an administrative hearing and reconsideration of his default status and Medicare exclusion. (Document 4-9 at 2). Plaintiff did not exhaust his administrative remedies within the time allotted. The Court cannot allow Plaintiff to circumvent the administrative process by now hearing his claim. Because Plaintiff did not request a hearing within sixty (60) days, and therefore, did not obtain a "final decision of the [agency] made after a hearing to which [he] was a party," the Court does not have jurisdiction to hear Plaintiff's exclusion claim.

Furthermore, Plaintiff's claim "arises under this subchapter" because he is seeking a monetary benefit from the agency, which the agency has denied, and is now "challenging the

lawfulness of that denial." *Shalala,* 529 U.S. at 10; *see United States Dep't of H.H.S. v. James*, 256 B.R. 479, 481(W.D.Ky Nov. 3, 2000). Because U.S.C. § 405(h) bars Section 1331 review, the Court has no jurisdiction to review the agency's authority to exclude Plaintiff from participation in Medicare, Medicaid, and all federal health care programs.

Even if the Court were to rule otherwise, the Settlement Agreement Plaintiff entered into in July 2001 provided that "[s]hould a default on the Agreement occur, [Plaintiff] waives all procedural rights including but not limited to notice, hearing, appeal, and administrative and judicial review, with respect to the immediate reimposition of the exclusion under 42 U.S.C. §§ 1320a-7b(14) and 1395ccc(a)(3)." (Document 4-5 at 2-5). In the Petition, Plaintiff admits that "[he] had to cease repayment under the terms he had previously agreed to, on or about February 22, 2005." (Document 1 at 3). Plaintiff breached his settlement agreement. By letter dated June 27, 2008, HHS advised Plaintiff that if HHS did not receive a payment from him to bring his account current by July 27, 2008, then HHS would "initiate actions to permanently exclude [him] from participating in the Medicare/ Medicaid programs, pursuant to paragraph 8 of the settlement agreement." (Document 4-7 at 2) (emphasis in original). By letter dated August 29, 2008, HHS notified Plaintiff that his exclusion "has been reinstated effective August 12, 2008 and will remain in effect until [his] debt has been completely repaid." (Document 4-8 at 2). Because Plaintiff agreed to forego "judicial review with respect to the immediate reimpostion of the exclusion" should he default on the Settlement Agreement, and then subsequently did default, Plaintiff is precluded from seeking judicial review.

## *VI. CONCLUSION*

Wherefore, based on the findings herein, the Court does hereby **ORDER** that the *Motion of the United States of America to Dismiss for Lack of Subject Matter Jurisdiction* (Document 4) be **GRANTED.** The Court further **ORDERS** that Plaintiff's Petition (Document 1) be **DISMISSED WITH PREJUDICE** as to Plaintiff's exclusion claim and **DISMISSED WITHOUT PREJUDICE** as to Plaintiff's debt wavier claim.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: January 4, 2013

Irene C. Berger

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA